UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID M. SMITH, | Case No. 5:20-cv-00438 |
| Petitioner, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Darrell Clay |
| LASHANN EPPINGER, Warden, | |
| Respondent. | |

**OPINION AND ORDER**

Petitioner David Smith filed a petition for a writ of habeas corpus asserting seven grounds for relief.  (ECF No. 1, PageID #6–15.)  The Magistrate Judge recommends that the Court dismiss the petition in its entirety and grant a certificate of appealability as to ground two.  (ECF No. 26, PageID #3000.)  Respondent objects to the recommendation for a certificate of appealability on that ground.  (ECF No. 28.)  For the reasons that follow, the Court **OVERRULES** Respondent's objection and **ADOPTS** the Magistrate Judge's report and recommendation.  The Court **GRANTS** a certificate of appealability under 28 U.S.C. § 2253(c) as to ground two of the petition.

**STATEMENT OF FACTS**

### A. The Attack on Quortney Tolliver and Initial Investigation

On October 16, 2015, Quortney Tolliver was attacked in her mobile home in Portage County, Ohio.  (ECF No. 7-1, ¶ 12, PageID #399.)  *See also State v. Smith*, No. 2016-P-0074, 2018-Ohio-4799, ¶ 12 (Ohio Ct. App.).  She sustained severe injuries including skull and facial fractures.  (ECF No. 7-1, ¶ 18, PageID #400.)  At trial,

Tolliver testified that she opened her front door, turned to get her shoes, then "felt a hit." (*Id.*, ¶ 57, PageID #409.) Tolliver lost consciousness but regained it long enough to exit her home, at which point a neighbor saw her and called the authorities. (*Id.*, ¶¶ 57 & 64, PageID #409 & #411–12.) When law enforcement arrived, Tolliver's home was covered in blood, and there was a hammer in the kitchen. (*Id.*, ¶ 65, PageID #412.) For approximately two weeks after the incident, Tolliver was hospitalized and in a medically induced coma. (*Id.*, ¶ 18, PageID #400.)

During her hospital stay, law enforcement presented Tolliver with several photo arrays of potential suspects, but she was unable to identify any of the twenty-four individuals in the photos as her attacker. (*Id.*, ¶ 19, PageID #400.) At the time, she was unable to speak due to her injuries, but was able to communicate by writing and shaking her head. (*Id.*) Tolliver asked the detectives who did this to her, and about her pending criminal charges for drug trafficking. (*Id.*) In November 2015, she told detectives she did not remember the attack. (*Id.*)

### B. Alleged Suggestive Identification of Mr. Smith

In December 2015, a law enforcement officer assigned to the case, Lt. Greg Johnson, visited Tolliver at the nursing facility where she was recovering. (*Id.*, ¶ 20, PageID #400.) Tolliver's mother was present during the visit, which was recorded. (*Id.*, ¶ 20, PageID #400–01.) Upon entering the room, Lt. Johnson introduced himself and stated, "I think I found out who did this to you." (*Id.*, ¶ 21, PageID #401.) He showed Tolliver a photo of Petitioner; at first she did not recognize him and asked who he was. (*Id.*) Then, she remembered that he had given her a ride to Cleveland in the past. (*Id.*)

2

Lt. Johnson proceeded to tell Tolliver that Mr. Smith had "nothing good" to say about her, and that he had discovered text messages exchanged between them on the day she was attacked. (*Id.*, ¶ 22, PageID #401.) Then, Tolliver remembered that Mr. Smith was supposed to give her another ride to Cleveland the day of her attack. (*Id.*) However, she could not recall the day clearly. (*Id.*) Lt. Johnson answered questions from Tolliver and her mother and told them that Mr. Smith was not in custody yet. (*Id.*, ¶ 23, PageID #401.) Lt. Johnson told Tolliver that Mr. Smith was "hoping" she was dead because otherwise he would be "in trouble" and that Mr. Smith was "cold hearted." (*Id.*, ¶¶ 23–24, PageID #401.) Lt. Johnson also told Tolliver and her mother that Mr. Smith had a "long" criminal history, including a period of incarceration for attempted murder. (*Id.*, ¶ 24, PageID #401.)

Then, Tolliver explained how she knew Mr. Smith. (*Id.*, ¶ 25, PageID #401.) They met a few times through a mutual friend, and Tolliver once paid Mr. Smith to drive her to Cleveland. (*Id.*) Tolliver remembered exchanging text messages with Mr. Smith the night before the attack but denied that he had ever entered her home. (*Id.*)

However, Tolliver described a dream she had while unconscious that included Mr. Smith at her home. (*Id.*, ¶ 26, PageID #402.) She explained that in the dream Mr. Smith was at her trailer, and she was hit with a hammer before falling on her friend's porch. (*Id.*) She explained that she could not say for sure whether it was a dream or a memory. (*Id.*)

3

Also, Lt. Johnson told Tolliver that Mr. Smith's DNA was found in her bathroom sink mixed with her blood, and that he had "left her for dead." (*Id.*, ¶ 27, PageID #402.) Lt. Johnson advised Tolliver and her mother not to speak about Mr. Smith with anyone. (*Id.*)

### C. Tolliver's Recollection

In February 2016, Lt. Johnson met with Tolliver again. (*Id.*, ¶ 28, PageID #402.) The conversation was recorded. (*Id.*) During this meeting, Tolliver was able to recall and explain what happened the day of her attack. (*Id.*) She explained that she was expecting Mr. Smith at her home because he agreed to give her a ride, and after she opened the door for him and turned to put her shoes on, he swung at her with a hammer. (*Id.*, ¶ 30, PageID #402.) Tolliver explained that she was unable to remember these details before and stated that "in my coma I was having dreams, so many dreams, and that was one of them." (*Id.*, ¶ 31, PageID #403.) Tolliver told Lt. Johnson that she was certain this recollection was not a dream. (*Id.*, ¶ 32, PageID #403.)

### D. Motion to Suppress and Trial

Before trial, Mr. Smith moved to suppress Tolliver's identification of him as her assailant on the grounds that Lt. Johnson's identification methods were unduly suggestive and unreliable. (*Id.*, PageID #109.) The State trial court held a hearing on the motion. At the hearing, Lt. Johnson testified that Mr. Smith first became a suspect in the investigation when he discovered eighty text messages and/or phone calls between Mr. Smith and Tolliver during the twenty-four hours preceding the attack. (*Id.*, ¶ 33, PageID #403.)

4

Tolliver testified that she initially pretended not to know Mr. Smith when Lt. Johnson showed her his photo in December 2015 because she knew him through her drug trafficking activities, and she did not want her mom, who was present, to know she was still selling drugs. (*Id.*, ¶ 34, PageID #403.) Also, Tolliver testified that she remembered that Mr. Smith had attacked her before Lt. Johnson showed her his photo. (*Id.*)

On August 4, 2016, the State trial court denied Petitioner's motion to suppress. (*Id.*, PageID #165–67.) The trial court denied the motion because it found the procedure Lt. Johnson used to obtain Tolliver's identification of Mr. Smith was not unduly suggestive under the circumstances. (*Id.*, PageID #166.) Specifically, the trial court determined that because Lt. Johnson knew that Tolliver and Mr. Smith were recently acquainted and had communicated frequently in the hours leading up to the attack, "it would be logical for an investigator to approach the potential identification of a suspect known to the witness" by presenting her with just his photograph. (*Id.*, PageID #166–67.) The trial court did not cite *Neil v. Biggers*, 409 U.S. 188 (1973), in ruling on Petitioner's motion to suppress.

At trial, a jury convicted Petitioner of attempted murder, felonious assault, aggravated robbery, and aggravated burglary. (ECF No. 7-1, PageID #178.) The trial court sentenced Mr. Smith to an aggregate prison term of 23 years for these convictions and for violating the terms of his post-release control in a prior State case. (*Id.*, PageID #180–81.)

5

## PROCEDURAL HISTORY

### A. Direct Appeal

On direct appeal, Petitioner argued that the trial court committed prejudicial error by denying his motion to suppress Tolliver's identification of him as her assailant. (*Id.*, ¶ 6, PageID #397). The intermediate State appellate court ruled that the trial court did not err in denying Petitioner's motion to suppress. (*Id.*, ¶ 49, PageID #407.) The appellate court concluded that Lt. Johnson's procedure for identification was impermissibly suggestive because he made repeated disparaging statements about Mr. Smith and told Tolliver about evidence linking Mr. Smith to the scene before she conclusively identified him. (*Id.*, ¶ 37, PageID #404.) However, applying *Biggers*, 409 U.S. 188, the appellate court held that the identification was otherwise reliable under the totality of the circumstances because Tolliver was already familiar with Mr. Smith, had ample opportunity to see her assailant clearly when she opened her door, and was not suffering any physical impairment to her sight. (*Id.*, ¶¶ 44–48, PageID #406–07.)

After the appellate court's ruling, Petitioner timely appealed to the Ohio Supreme Court. (*Id.*, PageID #424–25.) On April 3, 2019, the Ohio Supreme Court declined to exercise jurisdiction. (*Id.*, PageID #460.)

### B. Federal Habeas Petition

On February 26, 2020, Petitioner applied for a writ of habeas corpus. (ECF No. 1.) The petition asserts seven grounds for relief. (*Id.*, PageID #6–15.) Only ground two remains at issue. In ground two, Petitioner asserts that the trial court erred in denying his motion to suppress. (*Id.*, PageID #7.) He argues that the State

trial court violated his Fourth and Fourteenth Amendment rights by admitting the identification evidence. (*Id.*)

On January 11, 2023, the Magistrate Judge issued a report and recommendation that the Court dismiss ground one as non-cognizable, grounds six and seven as procedurally defaulted, and grounds two, three, four, and five on their merits. (ECF No. 26, PageID #2971, #2979 & #2990–98.) Further, the Magistrate Judge recommended that the Court issue a certificate of appealability as to ground two. (*Id.*, PageID #2999.) Respondent objects to that recommendation. (ECF No. 28, PageID #3004–08).

## STANDARD OF REVIEW

A district court judge may designate a magistrate judge to submit "proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by local rule, *see* LR 72.2. When reviewing a report and recommendation, if a party objects within the allotted time, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "The filing of objections to a magistrate's report enables the district judge to focus attention on

7

those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn,* 474 U.S. 140, 147 (1985).

Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Importantly, the Court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it. Accordingly, it is the Court's task in this matter to review the Magistrate Judge's report and recommendation de novo, based on the specific objections the party raises.

## ANALYSIS

Where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States," he is entitled to a writ of habeas corpus. 28 U.S.C. §§ 2241(c)(3) & 2254(a). At bottom, the writ tests the fundamental fairness of the State court proceedings resulting in the deprivation of the petitioner's liberty. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A State court adjudication is "contrary to" Supreme Court precedent under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams*, 529 U.S. at 405. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under Section 2254(d)(1), an unreasonable application of federal law is different than an incorrect application of federal law. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410). A State court adjudication involves "an unreasonable application of" Supreme Court precedent under Section 2254(d)(1) in one of two ways: (1) if the State court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular State prisoner's case; or (2) if the State court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See Williams*, 529 U.S. at 407.

9

### I. Objection

Respondent objects to the Magistrate Judge's recommendation that the Court grant a certificate of appealability as to ground two of the petition. (ECF No. 28, PageID #3004). Specifically, Respondent argues that the Magistrate Judge's evaluation of ground two on its merits gave appropriate deference to the State courts. (*Id.*, PageID #3005.) Even if Lt. Johnson's identification methods were not "best practices," Respondent argues, that does not amount to an appealable ground for habeas relief. (*Id.*, PageID #3006.)

Respondent quotes the Magistrate Judge's independent evaluation of ground two of the petition under *Biggers* to argue that sufficient factors weighed in favor of the reliability of Tolliver's identification and, therefore, that ground two lacked merit. (*Id.*, PageID #3004–05.) Then, Respondent argues this conclusion demonstrates that Mr. Smith has not made a substantial showing that admission of the identification evidence at trial denied him a constitutional right. (*Id.*, PageID #3006.)

In response, Petitioner argues that Respondent misrepresents the applicability of *Biggers* to this case and asks the Court to grant the writ as to ground two or overrule Respondent's objection and grant a certificate of appealability. (ECF No. 29, PageID #3010 & #3014.) Specifically, Petitioner disputes Respondent's position that *Biggers* is not applicable to a case where the witness knows the assailant. (*Id.*, PageID #3010.) Also, Petitioner avers that Respondent incorrectly argues that the full transcript of Tolliver's conversations with Lt. Johnson were admitted as evidence at trial. (*Id.*) Trial counsel's decision not to play this audiotape and appellate counsel's failure to raise the issue on direct appeal are the bases for Petitioner's

ineffective assistance of counsel claim. (ECF No. 1, PageID #8–9.) Because Petitioner did not file an objection to the report and recommendation and the Magistrate Judge does not address this issue, the Court declines to address it here.

## II.     Certificate of Appealability as to Ground Two

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1). Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the petitioner must show that reasonable jurists would find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### II.A.  Application of *Biggers*

An identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification. *Perry v. New. Hampshire*, 565 U.S. 228, 232 (2012). The Supreme Court directs courts to engage in a case-by-case assessment of the totality of the circumstances to determine whether improper police conduct created an impermissible risk of misidentification. *Biggers*, 409 U.S. 188; *see also Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). After making this assessment, trial court should suppress the identification evidence if it is unreliable because "reliability is the linchpin." *Brathwaite,* 432 U.S. at 114.

The central question is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199. The following factors are relevant to determining reliability: the opportunity of the witness to view the accused at the time of the crime; the witness's degree of attention; the accuracy of any prior description of the accused; the level of certainty the witness demonstrates at the confrontation; and the length of time between the crime and the confrontation. *Id.* at 199–200. Courts weigh these factors against the corrupting effect of the suggestive identification process. *Brathwaite*, 432 U.S. at 114.

The parties disagree whether *Biggers* is binding in this case. Petitioner argues that *Biggers* is established Supreme Court precedent that the State trial court ignored in ruling on his motion to suppress. (ECF No. 29, PageID #3009–10.) Respondent argues that *Biggers* is not binding in cases where the witness knew the assailant. (ECF No. 28, PageID #3005.) In *Biggers*, the Supreme Court did not address a witness's prior acquaintance with the accused. *Biggers*, 409 U.S. at 200. Where a witness knows the individual she identified, as was the case with Tolliver and Mr. Smith, that fact informs the reliability analysis, but does not render *Biggers* irrelevant. *See Haliym v. Mitchell*, 492 F.3d 680, 706 (6th Cir. 2007) (holding that prior acquaintance increases the likelihood of an accurate and reliable identification but does not render the *Biggers* analysis moot); *but see United States v. Beverly*, 369 F.3d 516, 539 (6th Cir. 2004) (noting that the *Biggers* factors are not particularly helpful where there is prior acquaintance).

12

Ultimately, this dispute is not determinative of the Court's ruling on Respondent's objection for two reasons. First, the trial court need not affirmatively cite Supreme Court precedent, it need only engage in analysis that is not contrary to that precedent. *Early*, 537 U.S. at 8. Here, the trial court analyzed the reliability of Tolliver's identification, although it did so in a cursory manner. (ECF No. 7-1, PageID #166.) Second, the State intermediate appellate court and the Magistrate Judge engaged in a *Biggers* analysis and concluded that Tolliver's identification of Mr. Smith included sufficient indicia of reliability. (ECF No. 26, PageID #2986–88; ECF No. 7-1, ¶¶ 44–48, PageID #406–07.) Respondent does not otherwise object to the Magistrate Judge's analysis of the *Biggers* factors. (*Id.*) The question relevant to Respondent's objection is whether, under *Biggers* and other established Supreme Court precedent, Petitioner made a substantial showing of a violation of his due process rights.

### II.B. Substantial Showing

Respondent's objection characterizes Lt. Johnson's actions as not "best practices" and does not concede, as the Magistrate Judge found, that they were impermissibly suggestive. (ECF No. 28, PageID #3006.) There is little question here whether the identification procedures Lt. Johnson employed were unduly suggestive and unnecessary. The State trial court expressed concern about them. (ECF No. 7-1, PageID #166.) The intermediate State appellate court determined that the identification procedures were unnecessary and suggestive. (*Id.*, ¶ 37, PageID #404.) Further, the record shows that these finds are not erroneous. Before Tolliver identified Mr. Smith as her assailant, Lt. Johnson showed her a picture of Mr. Smith

13

and said, "I think I found out who did this to you," then repeatedly made suggestive statements about Mr. Smith's character and criminal history. (*Id.*)

However, the Magistrate Judge and the State courts weighed Tolliver's prior acquaintance with Mr. Smith heavily in favor of the reliability of her identification. (ECF No. 7-1, PageID #166–67; *id.*, ¶¶ 44–48, PageID #406–07; ECF No. 26, PageID #2987–88.) Tolliver and Mr. Smith exchanged upwards of eighty text messages and/or phone calls within the 24 hours before the attack, and Tolliver had recently accepted a ride to Cleveland from Mr. Smith. (ECF No. 7-1, ¶ 22, PageID #401.) Other factors the State intermediate appellate court considered included Tolliver's opportunity to view her assailant and her testimony that she was certain Mr. Smith was her assailant. (*Id.*, ¶¶ 44–48, PageID #406–07.) However, Tolliver also failed to provide any description of her attacker before Lt. Johnson showed her Mr. Smith's photo and identified Mr. Smith as her assailant. (*Id.*, ¶¶ 21–21, PageID #401.) Also, Tolliver had recently suffered a traumatic head injury that left her in a coma and potentially open to suggestion. (*Id.*, ¶ 18, PageID #400.)

On balance, the Court agrees with the Magistrate Judge's evaluation of the merits of Petitioner's ground for relief. On the merits, the record shows that the judgment of the State courts is not contrary to or an unreasonably application of clearly established federal law as determined by the Supreme Court. However, a petitioner makes a substantial showing of a constitutional right by demonstrating "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

14

to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Here, reasonable jurists could disagree whether Tolliver's identification of Mr. Smith had sufficient reliability to overcome Lt. Johnson's suggestive identification procedures, as the State trial court determined. As discussed above, Lt. Johnson's identification procedures were suggestive and there are several facts surrounding Tolliver's identification of Petitioner that weigh against reliability. Therefore, Petitioner makes a substantial showing of an entitlement to a certificate of appealability on ground two of the petition.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Respondent's objection (ECF No. 28) and **ADOPTS** the Magistrate Judge's report and recommendation (ECF No. 26). The Court **GRANTS** a certificate of appealability as to ground two of the petition under 28 U.S.C. § 2253(c). For good cause shown, the Court **GRANTS** Petitioner's motion to waive the filing fee for the certificate of appealability (ECF No. 27.)

**SO ORDERED.** Dated: June 20, 2023

J. Philip Calabrese
United States District Judge
Northern District of Ohio